UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOEL RODRIGUEZ,<br><br>Plaintiff,<br><br>v.<br><br>ISAAC,<br><br>Defendant. | 1:11-cv-01914-AWI-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANT'S MOTION TO DISMISS BE GRANTED, WITH PREJUDICE, BASED ON THE DOCTRINE OF RES JUDICATA<br>(ECF No. 23.)<br><br>OBJECTIONS, IF ANY, DUE IN 30 DAYS |

I.      BACKGROUND

Noel Rodriguez ("Plaintiff") is a state prisoner proceeding *pro se* with this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed the Complaint commencing this action on November 17, 2011.  (ECF No. 1.)  Following a screening order by this Court,[1] Plaintiff filed a Second Amended Complaint on May 22, 2014. (ECF No. 15.)  That complaint alleged that Defendant Isaac failed to inform the prison committee who determined whether Plaintiff could be released into the General Population that Defendant Isaac had confidential information that the "South Side" gang wanted to kill Plaintiff.  On June 1, 2009, after Plaintiff was released

---

[1] Prior decisions including the screening orders were issued by the prior Judge, Magistrate Judge Gary Austin.

into the General Population, he alleges that gang members attempted to kill him. "Due to Defendant's failure to report said security concern, Committee released plaintiff to the general population, resulting in the attempted murder of plaintiff, thus amounting to an 8th Amendment violation." (ECF No. 15 at 7:8-14.)

This Court held that Plaintiff's Second Amended Complaint stated a claim against Defendant Isaac for failure to protect Plaintiff, in violation of the Eighth Amendment. (ECF No. 16.) The Court made this decision based on screening Plaintiff's complaint, without input from Defendant and without reference to the separate case previously filed by Plaintiff on this issue, as discussed below.

The Court now knows that more than two years before filing the present case, Plaintiff filed a complaint that was assigned to Magistrate Judge Michael Seng, similarly claiming that he had been improperly released into the general population knowing that his life was in danger by a gang, and that on June 1, 2009, Plaintiff was subsequently assaulted by that gang. Rodriguez v. Isaac et al., 1:09-cv-01784-AWI-MJS, ECF No. 1. Magistrate Judge Seng repeatedly screened Plaintiff's complaint in that case, and after multiple amendments, recommended dismissal of Plaintiff's complaint with prejudice. 1:09-cv-01784-AWI-MJS, ECF No. 31. The District Court adopted the recommendation and dismissed Plaintiff's case. Id., ECF No. 33. Plaintiff then appealed to the Ninth Circuit, which affirmed the District Court's decision. Id., ECF No. 43.

In the case now before this Court, on June 30, 2015, Defendant Isaac filed a motion to dismiss arguing that Plaintiff's claims are barred by the doctrines of *res judicata* and collateral estoppel. (ECF No. 23.) Plaintiff opposed the motion on September 2, 2015. (ECF No. 40.) Defendant filed a reply on September 9, 2015 (ECF No. 41), and the matter is now before this Court.

Because this Court agrees that Plaintiff's complaint is barred by *res judicata*, it recommends granting Defendant's motion to dismiss.

## II.    PLAINTIFF'S COMPLAINTS

### A.  Plaintiff's Complaint Now Pending Before this Court

Plaintiff is presently incarcerated at Calipatria State Prison in Calipatria, California, in the custody of the California Department of Corrections and Rehabilitation (CDCR). The operative complaint in this case is Plaintiff's Second Amended Complaint,[2] filed May 22, 2014. (ECF No. 15.)  The events at issue in the Second Amended Complaint allegedly occurred at the California Substance Abuse Treatment Facility and State Prison (SATF) in Corcoran, California, when Plaintiff was incarcerated there. Plaintiff names as sole defendant Correctional Counselor Isaac ("Defendant"). Defendant was employed by the CDCR at SATF at the time of the events at issue.  Plaintiff's factual allegations follow.

Plaintiff alleges that he was a member of the South Side prison gang, which takes orders from the Mexican Mafia prison gang.  Plaintiff had problems with both of these gangs, resulting in Plaintiff engaging in violence with three of his cell mates. Plaintiff was placed in solitary confinement between 1998 and 2008 for attempted murder, attempted battery, and murder.

In March 2008, Plaintiff appeared before a classification committee and was informed by counselor O'Baily [not a defendant] that the South Side prison gang wanted to kill Plaintiff, and Plaintiff should be placed in protective custody. Plaintiff refused protective custody, and the committee decided to retain Plaintiff in solitary confinement due to security concerns.

On August 6, 2008, Defendant Isaac informed Plaintiff that she had become aware of confidential information that the South Side gang wanted to kill Plaintiff, and Plaintiff should be placed in protective custody. Plaintiff refused protective custody. Defendant Isaac allegedly informed Plaintiff that she would advise the classification committee to keep Plaintiff in solitary confinement due to security concerns.

---

[2]  Plaintiff labelled the complaint the Fourth Amended complaint, but it was the second amended complaint filed in this Court.

The following day, the classification committee asked defendant Isaac if security concerns existed. Defendant responded, "No." (Second Amended Complaint, ECF No. 15 at 6:9.)  The committee asked Plaintiff if any concerns existed. Plaintiff responded, "No." (Id. at 6:11.)  The committee decided that since no security concerns existed, Plaintiff would be released to the general population at SATF. On December 16, 2008, Plaintiff was released to the general population.

Several months later, on June 1, 2009, the South Side gang identified Plaintiff as an enemy and attempted to kill him.

On August 5, 2009, the classification committee determined that security concerns did exist, and Plaintiff should never have been placed in the general population.

Plaintiff requests monetary damages.

**B. Plaintiff's Prior Complaint, Ultimately Dismissed**

More than two years before filing his complaint in this case, Plaintiff filed a complaint also in the Eastern District of California, which was eventually assigned to Magistrate Judge Michael Seng.  1:09-cv-01784-AWI-MJS, ECF No. 1.[3]  The initial complaint was asserted against Defendant Isaac among others.  In that initial complaint, Plaintiff alleged "On August, 2008, Committee releases me to the main line, knowing that my life was in danger by the 'Southern Hispanic Prison Gang.'  On June 1, 2009, 2 members of the 'Southern Hispanic Prison Gang" attempt to kill me on the yard.  I got stabed [sic] over twelve times then air lifted to the Fresno County Medical Center for Operations."  Id., ECF No. 1 at 3 ¶IV.  Upon

---

[3] The relevant pleadings in the case before Magistrate Judge Seng were submitted in a request for judicial notice by Defendants.  (ECF No. 24.)  This Court grants the request for judicial notice over the court documents in that case.  United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980) ("Fed. R. Evid. 201(b)(2) permits judicial notice of a fact that is 'not subject to reasonable dispute in that it is ... (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.' In particular, a court may take judicial notice of its own records in other cases, as well as the records of an inferior court in other cases.").

screening,[4] Magistrate Judge Seng dismissed Plaintiff's complaint with leave to amend.  <u>Id.</u> at 21.  Part of Magistrate Judge Seng's reasoning was as follows:

> Plaintiff alleges that before he was attacked he warned, and Defendant Isaac acknowledged, that he was at risk for attack; he then was attacked and seriously injured by those who he and Isaac feared would attack him. (Compl. at 11 and 12). It appears Plaintiff was assigned to the yard at issue in August 2008. (Compl. at 3). The attack did not occur until June 1, 2009. (<u>Id.</u>) Plaintiff interacted with Southern Hispanics for almost a year without incident. That fact in and of itself creates a question as to whether that assignment posed unreasonable risk to Plaintiff. If, on amendment, Plaintiff can explain how the condition lasted so long without attack and still constituted an unreasonable risk, the Court will find that these allegations, taken as true at this point of the proceedings, reflect a sufficiently serious deprivation of Plaintiff's right to be free from physical harm as to satisfy the objective prong of the deliberate indifference standard. <u>Jameson v. Rawers</u>, 2011 WL 862739, *5 (E.D. Cal. Mar. 9, 2011).
>
> Additionally, Plaintiff has failed to allege sufficient facts to show that any particular Defendant knew of **and disregarded** an excessive risk to his health or safety. Although Defendant Isaac knew of the risk to Plaintiff's safety, he offered Plaintiff protective custody as protection from the risk; he cannot be said to have disregarded it. (Compl. at 11, 12).  Plaintiff refused that protection. He alleges nothing to indicate that Isaac's offer of that option in lieu of another reflects deliberate indifference.

<u>Id.</u> at ECF No. 21.  Plaintiff filed an amended complaint, <u>id.</u> at ECF No. 22, and Magistrate Judge Seng dismissed it again, with leave to amend.  <u>Id.</u> at ECF No. 23.  Part of the Court's reasoning was as follows:

> To begin with, Plaintiff alleges that prior to his release into the general population yard, Defendant Isaac twice offered him placement on the protective custody yard – which Plaintiff refused. (Doc. 22, 1st A.C., pp. 10-11.) The offers to place Plaintiff on the protective custody yard indicate that Defendant Isaac was not deliberately indifferent to Plaintiff's situation with South Siders. Rather, it appears that Plaintiff's refusal to "program with child molesters and rapists in a protective custody yard" played at least a minor roll in his ultimate

---

[4] The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).

placement on the general population yard. (<u>Id.</u>, at pp. 11-12.) Further, Plaintiff's evidence shows in his own handwriting that he "chose to program with the Southern Hispanics [South Siders]" when he was given the choice between that and protective custody. (<u>Id.</u> at pp. 52-53, 86-87.)

Also, even though Plaintiff alleges he was endorsed for general population yard at CSP, his exhibits actually show that though he was cleared for yard at a Level IV, 180 facility while at CSP (a 270 facility), he was retained in CSP's ASU pending transfer because his release into general population "may present an immediate threat to the safety and security of self/others as well as the security of the institution." (<u>Id.</u>, at pp. 13, 38.) Being a member of the committee that elected to retain Plaintiff in ASU pending transfer due to safety/security concerns does not equate to deliberate indifference by Defendant Isaac. The exhibits also show that Plaintiff was present at the hearing where his SHU placement was reviewed, agreed with the committee's decision, and stated that he did not have safety concerns. (<u>Id.</u>, at p. 38.) Defendant Isaac's actions on the committee cannot be said to have been deliberately indifferent to a serious risk to Plaintiff's safety when Plaintiff both agreed with the committee's decision and stated that he did not have safety concerns.  Both Plaintiff's allegations and exhibits show that four people were on the committee that reviewed and lifted Plaintiff's indeterminate SHU term (<u>id.</u>, at pp. 12, 38) and that all placement decisions were made by such a committee (<u>see e.g.,</u> <u>id.</u>, at pp. 36, 38, 43, 45). Plaintiff does not address how, out of a four person committee, Defendant Isaac would have any greater than one quarter of the decision making authority so as to make his change in yard placement attributable solely to Defendant Isaac. Nor does Plaintiff show how Defendant Isaac's vote on the fourperson committee carried any greater weight than the votes of the other committee members.

Additionally, even if Plaintiff could show that Defendant Isaac acted with deliberate indifference in her role regarding his release from the SHU, Plaintiff's allegations show that the actions complained of neither caused him actual injury, nor caused his future health/safety to be unreasonably endangered.  Plaintiff's allegations show that he was attacked by South Siders on the SATF general population yard on June 1, 2009 (<u>id.</u>, at p. 17), which was: (1) roughly ten months after Defendant Isaac and the committee at CSP recommended his indeterminate SHU status be lifted and Plaintiff be held in ASU pending transfer to a Level IV, 180 facility; (2) approximately seven months after he was transferred out of CSP to SATF (<u>id.</u>, at pp. 11, 14); and (3) approximately five and a half months after the committee at SATF cleared him for the general population yard (<u>id.</u>, at p. 45). The fact that the attack took place on the general population yard at a different facility coupled with the ten months lapse of time between the allegations against Defendant Isaac and the attack on Plaintiff at a different facility (SATF) make Defendant Isaac's involvement too attenuated to have caused Plaintiff's alleged injury – particularly given the intervening release

of Plaintiff to the general population yard by the placement committee at SATF which Plaintiff stated he agreed with. (Id.)

Plaintiff alleges that "it took five months for South Siders to attack" him because the Mexican Mafia is housed in Pelican Bay and CSP and they relay their orders to South Siders via U.S. Mail which is delayed by inspection/decoding by prison officials. (Id., at pp. 14-15.) However, this explanation does not suffice to make the attack at SATF Defendant Isaac's liability. While Plaintiff was attacked by South Siders a little over five months after he was placed in the SATF general population yard, it occurred approximately ten months subsequent to Defendant Isaac's actions at a different facility. This lapse of time and change in facility is simply too far removed from Defendant Isaac's actions at CSP to connect or link Defendant Isaac to the attack at SATF on June 1st.  See Monell, 436 U.S. 658; Rizzo, 423 U.S. 362.

Further, Plaintiff's allegations do not show, and cannot honestly be amended to show, that his future health/safety at ISP7 is unreasonably endangered as a result of Defendant Isaac's involvement in Plaintiff's placement in the general population yard at CSP – particularly since Plaintiff was subsequently returned to ASU. (Doc. 22, 1st AC, p. 47.) Accordingly, Plaintiff fails to state a cognizable deliberate indifference claim against Defendant Isaac. Even if he did, Defendant Isaac is not sufficiently linked to the injuries Plaintiff sustained when he was attacked on the SATF general population yard.

(ECF No. 23.)

Plaintiff then filed a second (ECF No. 24), and ultimately third amended complaint (ECF No. 29).  Magistrate Judge Seng recommended that this complaint be dismissed with prejudice, stating "Plaintiff has twice before been advised of the deficiencies in his pleading and given an opportunity to correct them. The Court can see no point in granting yet another opportunity to correct the same deficiencies.  Leave to amend would be futile."  (ECF No. 31 at 5:9-11).

The District Court adopted the findings and recommendations and closed the case on August 6, 2012.  (ECF No. 33.)

**C. The Ninth Circuit Affirms Dismissal**

Plaintiff appealed dismissal of his case to the Ninth Circuit.  The Ninth Circuit affirmed the District Court's dismissal of Plaintiff's case, stating:

A review of the record and the response to the October 12, 2012 order to show cause indicates that the questions raised in this appeal are so insubstantial as not to require further argument. See United States v. Hooton, 693 F.2d 857, 858 (9th Cir. 1982) (per curiam) (stating standard).

Accordingly, we summarily affirm the district court's judgment.

(ECF No. 43.)

### III.    MOTION TO DISMISS

#### A.    Legal Standards

The doctrine of *res judicata* bars the re-litigation of claims previously decided on their merits. Headwaters, Inc. v. U.S. Forest Serv., 399 F.3d 1047, 1051 (9th Cir. 2005).[5]  Under the doctrine of claim preclusion, a final judgment on the merits of an action precludes the parties or persons in privity with them from litigating the same claim that was raised in that action and all claims arising out of the same transaction or occurrence.  See Taylor, 128 S.Ct. at 2171; Rest.2d Judgments § 18.  "The elements necessary to establish *res judicata* are: '(1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties.'"  Headwaters, Inc., 399 F.3d at 1052 (quoting Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 322 F.2d 1064, 1077 (9th Cir. 2003)).  "[T]he doctrine of *res judicata* (or claim preclusion) 'bars all grounds for recovery which *could have been* asserted, whether they were or not, in a prior suit between the same parties ... on the same cause of action.'"  Costantini v. Trans World Airlines, 681 F.2d 1199, 1201 (9th Cir. 1982) (quoting Ross v. IBEW, 634 F.2d 453, 457 (9th Cir. 1980) (emphasis added)).

When determining, for *res judicata* purposes, whether a present dispute concerns the same claims as did prior litigation, the Ninth Circuit considers:  "(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether

---

[5]The Supreme Court recently clarified that the terms "claim preclusion" and "issue preclusion" are collectively referred to as "res judicata." Taylor v. Sturgell, 128 S.Ct. 2161, 2171 (2008).

the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts," which is the most important factor. Headwaters, Inc., 399 F.3d at 1052.

The related doctrine of collateral estoppel, or issue preclusion, provides that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." U.S. v. Bhatia, 545 F.3d 757, 759 (9th Cir. 2008) (quoting Ashe v. Swenson, 397 U.S. 436, 443 (1970)). Both doctrines apply to criminal and civil proceedings, and both require privity between the parties. Bhatia, 545 F.3d at 759 (citing U.S. v. Cejas, 817 F.2d 595, 598 (9th Cir. 1987) and see In re Schimmels, 127 F.3d at 881 (noting that, under *res judicata*, "parties or their privies" may be bound by a prior judgment); United States v. ITT Rayonier, Inc., 627 F.2d 996, 1000 (9th Cir. 1980) (requiring identity or privity between parties for collateral estoppel to apply)).

A defendant relying on *res judicata* or collateral estoppel as a defense must plead it as an affirmative defense. Blonder-Tongue Laboratories, Inc. v. University of Ill. Found., 402 U.S. 313, 350, 91 S.Ct. 1434, 1453 (1971). However, "if a court is on notice that it has previously decided the issue presented, the court may dismiss the action *sua sponte*, even though the defense has not been raised," Arizona v. California, 530 U.S. 392, 416, 120 S.Ct. 2304, 2318 (2000), provided that the parties have an opportunity to be heard prior to dismissal, Headwaters, Inc., 399 F.3d at 1055. "As a general matter, a court may, *sua sponte*, dismiss a case on preclusion grounds 'where the records of that court show that a previous action covering the same subject matter and parties had been dismissed.'" Id. at 1054-1055 (quoting Evarts v. W. Metal Finishing Co., 253 F.2d 637, 639 n. 1 (9th Cir. 1958)).

**B.    Discussion**

The Court finds that the present action 11-cv-01914 is substantively identical to the previously decided case 09-cv-01784 and thus satisfies the identity of claims. Both complaints allege that prison officials were to blame for the attack on Plaintiff by other inmates on June 1,

2009.  Both concern the decision of the Committee to release Plaintiff into the general population.

While the factdual allegations are not entirely identical -- either between the two cases or in the many iterations of amended complaints -- the Court finds that Plaintiff has raised the same claim or cause of action against Defendant Isaac in both cases.  Since the doctrine of *res judicata* bars all grounds for recovery which *could have been* asserted on the same cause of action, whether they were or not, it is of no consequence that Plaintiff offers slightly different facts in case <u>11-cv-01914.</u>  Both of the lawsuits arose out of the same transactional nucleus of facts: allegations that prison officials and the prison Committee inproperly placed Plaintiff in the general population.

The issues presented in the complaint were decided on the merits in the earlier case.  The Magistrate Judge issued multiple reasoned decisions, dismissing various iterations of the complaint.  The District Court adopted the recommendations in dismissing the complaint with prejudice.  The Ninth Circuit upheld the dismissal.

The Court also finds there is privity between the parties.  Both complaints were filed by the same plaintiff, Noel Rodriguez.  The only issue in dispute concerns whether Plaintiff's claims against Defendant Isaac in particular were truly dismissed in the earlier case.  There is a dispute about whether the final amended complaint that was dismissed with prejudice in the first action, which was subject to the Ninth Circuit appeal, was asserted against Defendant Isaac.  On this point, the Court finds that Plaintiff's third amended complaint is ambiguous.  It has Defendant Isaac listed first in the caption, suggesting he was still a named defendant.  Case 1:09-cv-01784-AWI-MJS, ECF No. 29.  However, it lists as defendants only various John Does, and does not state in the body that Defendant Isaac is still a defendant.  But the Court finds that whether or not Defendant Isaac was included in the last complaint to be dismissed is not dispositive.  It is clear that earlier versions of the complaint asserted claims against Defendant Isaac.  Those earlier versions of the complaint were screened out in part because the

allegations against Defendant Isaac were insufficient to state a claim.  As quoted above at length, the earlier case made substantive rulings dismissing the asserted claims against Defendant Isaac.  Plaintiff's failure to include Defendant Isaac in the final attempt at an amended pleading was most likely due to the fact that allegations against Defendant Isaac had already been dismissed.  If Plaintiff disagreed with those rulings, he could have appealed those decisions or continued to include Defendant Isaac in later iterations of the complaint. Plaintiff's choice to ultimately remove Defendant Isaac (if his last complaint was intended to do so), did not give him an opportunity to refile that lawsuit against Defendant Isaac before this Court.

The Court also finds that the factors highlighted by the Ninth Circuit also support the decision that Plaintiff's claims should be precluded by *res judicata* here.  Headwaters, Inc., 399 F.3d at 1052.  Defendant Isaac has a right to be free from litigation that another judge of this Court has found meritless, and the Ninth Circuit has agreed.  Substantially the same evidence would be involved -- namely what was known by Defendant Isaac, told to Plaintiff, and their conduct at the committee meeting.  This is apparent by reading the portions of the earlier rulings excerpted below, which evaluate exactly the same evidence and issues that would be examined in determining Plaintiff's current claim before this Court.  Both suits involve whether the prison and its officials infringed Plaintiff's rights under the Eighth Amendment.  And, most importantly, both suits arise out of the same transactional nuclear of facts, i.e., the Committee's decision to release Defendant into the general population despite knowledge by prison members of certain risks.

Based on this analysis, the Court finds that Defendant Isaac demonstrated that the doctrine of *res judicata* prohibits the re-litigation of Plaintiff's claims against her in the present

case 11-cv-01914-AWI-EPG, which were previously decided on their merits in case <u>09-cv-01784</u>. Therefore, Defendant is entitled to dismissal of this action, with prejudice.[6]

## IV.    CONCLUSION AND RECOMMENDATION

For the reasons set forth herein, IT IS HEREBY RECOMMENDED that Defendant's motion to dismiss Plaintiff's claims against her, filed on June 30, 2015, be GRANTED, DISMISSING this action in its entirety, with prejudice, for Plaintiff's failure to state a claim against her, based on the doctrine of *res judicata*.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, any party may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **December 30, 2015**          /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE

---

[6] Given the Court's ruling, it need not evaluate the related issue of collateral estoppel.  Moreover, the Court finds that *res judicata* is the more appropriate doctrine because this concerns similar if not identical cases rather than just individual issues in otherwise different cases.

12